IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 3:13cr154 |
| | ) | |
| v. | ) | |
| | ) | |
| BRANDON LEE CAUDLE, | ) | |
| | ) | |
| Defendant. | ) | |

**STATEMENT OF FACTS**

The parties stipulate that allegations contained in the indictment and the following facts are true and correct, and that had this matter gone to trial, the United States would have proven each of them beyond a reasonable doubt:

1. Between February 2 and March 8, 2012, the exact date being unknown, in the Eastern District of Virginia and within the jurisdiction of this Court, for the purpose of executing and attempting to execute a scheme and artifice to defraud the United States, defendant BRANDON LEE CAUDLE caused to be sent and delivered by the United States mails from FCC Petersburg to the IRS a Form 1040 for the year 2011 bearing the name, social security number, and forged signature of J.G., accompanied by a fraudulent Form W-2 falsely reflecting that the restaurant "Lola's Soul" had paid J.G. wages during 2011 in the amount of $37,358.00.

2. Between February 2 and March 8, 2012, the exact date being unknown, in the Eastern District of Virginia and within the jurisdiction of this Court, defendant BRANDON LEE CAUDLE did knowingly and unlawfully possess and use, without lawful authority, a means of identification of another person, that is, the name and social security number of J.G., during and in

1

relation to a felony violation contained in Chapter 63 of the United States Code, that is, Mail Fraud, in violation of Title 18, United States Code, Section 1341.

3. On March 8, 2007, the U.S. District Court for the Western District of North Carolina sentenced CAUDLE to serve a 70-month active sentence followed by three years of supervised release after his conviction on multiple fraud-related offenses. He served part of his sentence at Federal Correctional Complex in Petersburg (FCC Petersburg). As of January 2011, he had been released and was living in Charlotte, where he was supervised by the federal probation office

4. Beginning in at least January 2011, CAUDLE received stolen personal identifying information of other BOP inmates from Inmate A, who was then an inmate serving a sentence at FCC Petersburg.

5. In or around January-February 2011, CAUDLE electronically prepared and filed fraudulent tax returns for the year 2010 using the names and other stolen personal identifying information of C.G., M.W., E.S., S.R., J.M., J.J., and T.H., all of whom were inmates serving sentences with the BOP. These returns were accompanied by Forms W-2 falsely reflecting wages paid by "Lola's Soul," a restaurant in Charlotte, North Carolina formerly owned by CAUDLE. Each of the returns requested a refund based in part on the wages reflected in the accompanying W-2.

6. The returns filed using the names and other stolen personal identifying information of S.R., J.M., and J.J. all caused the IRS to send refunds that were routed to a bank account controlled by CAUDLE.

7. In late February 2011, Secret Service agents executed a search warrant on his residence. Among the items seized was a laptop computer that was later found to have copies of

the electronically filed 2010 returns on its hard drive. Shortly thereafter, CAUDLE was arrested on a supervised release violation petition. He was later found in violation of his supervised release conditions and sentenced to 21 months' imprisonment. As of January 2012, CAUDLE was imprisoned again at FCC Petersburg.

8. In or around January-February, 2012 Inmate A again provided CAUDLE with stolen personal identifying information of BOP inmates.

9. In or around January-February 2012, CAUDLE manually prepared fraudulent tax returns for the year 2011 using the names and other stolen personal identifying information of K.H., G.D., J.G., T.B., and A.H., all of whom were inmates serving sentences with the BOP. These returns were accompanied by Forms W-2 falsely reflecting wages paid by "Lola's Soul." Each of the returns requested a refund based in part on the wages reflected in the accompanying W-2. CAUDLE mailed these returns to the IRS from FCC Petersburg.

10. The return filed using the name and other stolen personal identifying information of J.G. caused the IRS to issue a refund in the amount of $2,778.04 that was routed to a bank account controlled by CAUDLE.

11. The tax returns referenced previously were fraudulent in that they were filed using the names and social security numbers of the inmates referenced without their knowledge or permission. Moreover, none of the inmates referenced received wages from Lola's Soul in either 2010 or 2011.

12. On June 5, 2013, Internal Revenue Service—Criminal Investigation agents interviewed Caudle at FCC Petersburg. During a post-*Miranda* statement, CAUDLE went through each of the tax returns referenced in the indictment and admitted that he was involved in

the filing of each return. He admitted that each of the returns was fraudulent and further related in part as follows:

    A.    When CAUDLE had been in Charlotte during January-Feburary 2011 Inmate A had obtained the personal identifying information for the inmates at issue and relayed it to him from prison in two ways: (a) by hiding the information in the bodies of purported legal documents mailed to CAUDLE; and (b) via emails sent to CAUDLE's father, which were then forwarded to CAUDLE. CAUDLE then filed the fraudulent returns and directed that the refunds be routed into his bank account. CAUDLE knew that he was eventually going back to prison on a supervised release violation and wanted to obtain as much money as possible before returning to prison.

    B.    Upon CAUDLE's return to FCC Petersburg, Inmate A continued to obtain the personal identifying information of inmates for CAUDLE's use in the scheme. CAUDLE used this information to file each of the 2011 tax returns at issue in this case, mailing them from FCC Petersburg to the IRS and directing that any refunds be routed into his bank accounts. He knew the filing of the returns was going to "bite him in the ass" at some point and intended to plead guilty.

    13.    For the purpose of calculating CAUDLE's sentencing range under the United States Sentencing Guidelines, the parties agree that the intended loss attributable to him is $49,020.00. The defendant understands that this agreed sentencing recommendation is not binding on the Court.

The actions taken by the defendant as described above were taken willfully, knowingly, and with the specific intent to violate the law. The defendant did not take those actions by accident, mistake, or with the belief that they did not violate the law. The defendant

4

acknowledges that the sole purpose of the foregoing statement of facts is to provide an independent factual basis for her guilty plea. It does not necessarily identify all of the persons with whom the defendant might have engaged in illegal activity or all illegal activity in which he engaged.

Respectfully submitted,

NEIL H. MACBRIDE
UNITED STATES ATTORNEY

By: _____
Michael C. Moore
Assistant United States Attorney

After consulting with my attorney and ~~pursuant to the plea agreement entered into this day,~~ I stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
BRANDON LEE CAUDLE

I am BRANDON LEE CAUDLE's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
James M. Nachman, Esquire

5